# Loverin, Hall & Co. to the use of Gunnison *versus* Humboldt Safe Deposit & Trust Co. to use of Burton et al.

mortgage may be kept alive, even after payment in full, if such were the intention of the parties, or if there are interests which require it, for their protection; but where a mortgagor procures the payment of the first mortgage, with his own money, it extinguishes that mortgage, in law and in equity, as between it and the second mortgage, and the latter takes its place.

April 28th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Erie county:* Of January Term, 1886, No. 306.

This was a feigned issue in which the Humboldt Safe Deposit & Trust Company to the use of John Burton, D. D. Barnes and E. L. Sprague was plaintiff, and Loverin, Hall & Co. to the use of Noble and Hall, to the use of H. B. Plumer

now for the use of Frank Gunnison were defendants, to try the validity of a judgment obtained upon a *scire facias sur* mortgage held by the defendants, and which they claimed was the first lien on certain real estate. This the plaintiff, who held a second mortgage on said real estate, denied, alleging that the first mortgage upon which said judgment had been obtained had been fully paid and discharged. The following facts appeared on the trial of the issue before CHURCH, P. J.

On September 9th, 1863, Rebecca Thompson, wife of V. M. Thompson, became the owner of the land described in the mortgage, the alleged payment of which is the subject matter of the controversy in this issue. On March 9th, 1867, she joined her husband in executing the said mortgage to Loverin, Hall & Company, which was given to secure her husband's indebtedness to Loverin, Hall & Co. By a change in the firm the mortgage became the property of Noble & Hall, who brought suit upon it and recovered judgment. A writ of error was taken to the judgment, which was affirmed by the Supreme Court. Noble & Hall then brought suit against Conrad J. Brown and Joseph Eichenlaub, who were sureties in the recognizance in error, and recovered a judgment. Brown procured the money to pay the judgment from H. B. Plumer, and Eichenlaub being released, gave his judgment bond to Plumer, the original judgment on the mortgage being also assigned to Plumer.

The mortgage, of which the plaintiff claims to be the owner, was given by Rebecca Thompson and her husband, August 7th, 1871, to the Humboldt Safe Deposit and Trust Company, and, by various assignments became the property of Burton, Barnes and Mrs. Sprague.

On October 9th, 1871, V. M. Thompson, the husband of Rebecca Thompson, was discharged, in proceedings in bankruptcy, from the payment of his debts.

On March 15th, 1875, Rebecca Thompson and husband conveyed the land described in the mortgages, to Clarence Lloyd Thompson, Victor Park Thompson and Clara Rebecca Thompson. This conveyance was made for the consideration of $8,000, and "subject to subsisting liens," among which were the two mortgages referred to.

The above are the undisputed facts as they existed May 7th, 1879. Clarence Lloyd, Victor Park and Clara Rebecca Thompson were the owners of the real estate. H. B. Plumer was the owner of the first mortgage, and as further security for it had a judgment entered upon a bond against Conrad J. Brown. John Burton, D. D. Barnes and Mrs. Sprague owned the second mortgage.

On May 7th, 1879, a written agreement was made between

Rebecca Thompson and Conrad J. Brown, administrator of Conrad Brown, deceased, by which, *inter alia*, in consideration of the satisfaction of all claims of Rebecca Thompson against the estate of Conrad Brown, deceased, and the conveyance of certain other real estate in the city of Erie, Conrad J. Brown, administrator, agreed to "purchase the Plumer judgment and mortgage" (the mortgage first named hereinbefore) "and to have the mortgage assigned to Mrs. Rebecca Thompson, or some one for her use." "Mrs. Rebecca Thompson having sold, conveyed and transferred the property on which this mortgage was given, to her children in the year 1875, it is not her intention that this paper, or anything done by virtue of it, should in any way work a conversion of said mortgage, but it is the design that said mortgage shall be and remain a subsisting lien against said property." This agreement was recorded in the Recorder's office of Erie county July 8th, 1879.

In pursuance of this agreement Conrad J. Brown, administrator, purchased the mortgage from Plumer, who assigned it to Frank Gunnison May 14th, 1879.

Execution was issued on the judgment obtained on the mortgage, and the property was sold November 13th, 1883, by the sheriff to Frank Gunnison for a sum not sufficient to pay his claim and costs. The sheriff made the special return provided by law in the case of the purchase of property by a lien creditor. The holders of the second mortgage, claiming that the first mortgage was paid, and was not therefore a lien on the land, asked for an issue to determine the validity of the lien, which issue was accordingly awarded. On the trial of the issue, the jury, under instructions of the court, rendered a verdict for the plaintiff.

The defendants thereupon took this writ, assigning for error, *inter alia*, the instructions of the court directing the jury to find a verdict for the plaintiff.

*Frank Gunnison* and *J. Ross Thompson*, for plaintiffs in error.—Whether or not the lien of the first mortgage was discharged depends upon the intention of the parties. A mortgage may be kept alive even after payment in full if such were the intention of the parties : Kuhn *v.* North, 10 S. & R., 399 ; Croft *v.* Moore, 9 Watts, 451 ; Yard *v.* Patton, 13 Pa. St., 278 ; Wilson *v.* Murphey, 1 Phila., 203 ; Bryar's Appeal, 1 Am. 81 ; Brightly's Equity Jurisprudence, 293, *et seq. ;* Huston *v.* Wickerham, 8 Watts, 523 ; Dougherty *v.* Jack, 5 Watts, 458 ; Moore *v.* Harrisburg Bank, 8 Watts, 138 ; Jones *v.* Johnson, 3 W. & S., 279.

There was no allegation or attempt to prove that the plain-

tiffs below parted with their money upon the faith of the extinguishment of the mortgage either by payment or merger. Such was not the fact. The payment to Plumer by Brown, and the assignment of the mortgage in consideration of that payment, were long after the mortgage had been given to the plaintiffs below. Their rights attached, and their position in point of lien was fixed, when their mortgage was recorded.

But, independently of the position here contended for, there is a fatal obstacle to the claim of the plaintiffs below that there was a merger of the mortgage in the inheritance. The assignment from Plumer did not unite the ownership of the mortgage and of the property in the same person. The mortgage was assigned to Gunnison, and the ownership is in him, either absolutely or as trustee, it is immaterial which. The title to the property was in Clarence Lloyd, Victor Park and Clara Rebecca Thompson. Mrs. Thompson was not the legal owner of the mortgage, nor was she the legal or equitable owner of the land.

"In the case of a mortgage, merger is producible only by joining the ownership of it to the ownership of the equity redemption": Huston v. Wickerham, 8 Watts, 579; Bascom v. Smith, 34 N. Y., 320.

An important consideration in the case is the fact that the several debts for which the mortgages of both the plaintiffs and defendant below were given, were the debts of the husband. The record of the *scire facias* on the mortgage in suit shows this to have been the fact in regard to the mortgage of the defendant below. And, in the absence of proof to the contrary, the presumption of law is that such is the case as to the mortgage of the plaintiffs in error.

*Benson* (*Brainerd* and *Olds* with him), for defendants in error.—There can be no question as to the law upon the facts in this case. The first mortgage having been paid by Thompson, brought the second mortgage to the front as the first lien. There never was any doubt or controversy that a payment of a mortgage by the maker or a judgment by the defendant extinguished them, as to his subsequent lien creditors or creditors in general: Freeman v. Burton, 4 Dallas, 214; Gibson v. Todd, 1 Rawle, 452; Thomas v. Jarden, 7 P. F. S., 331.

The assignee of a paid judgment takes no title against subsequent creditors: Wood v. Vanartsdale, 3 Rawle, 401.

Mr. Justice Paxson delivered the opinion of the Court, May 17th, 1886.

This is a very plain case. To state it briefly, it was an attempt to keep alive a mortgage which had been paid by the

mortgagors, against a subsequent unpaid mortgage given by the same mortgagors upon the same premises. The evidence is uncontradicted that it was the money of Mr. and Mrs. Thompson (the mortgagors) that paid the first mortgage. That the money actually came from Conrad Brown's estate is of no consequence. It was paid by said estate at the request of Mr. Thompson, with the understanding that such payment would settle a claim which Mr. and Mrs. Thompson held against the estate of Conrad Brown's father and mother. It was an indirect mode of doing it, but the result is the same. The money paid was in fact the money of the mortgagors. It is doubtless true that the mortgagors did not intend to have this mortgage satisfied. They may and probably did intend to keep it alive for the benefit of themselves or their children. We think the documentary evidence in the case shows this.

Where creditors are not concerned, there is perhaps no legal reason why it may not be done. Though actual payment discharges a judgment or other incumbrance at law, it does not discharge it in equity if there are interests which require it to be kept alive for their protection. Thus it may be kept on foot for the protection of a paying surety, and other cases which it is not necessary to name. And it was said by SHARSWOOD, J. in Wilson v. Murphy, 1 Phila., 203, "There is no doubt that a mortgage may be kept alive, even after payment in full, if such were the intention of the parties, and even though there be no actual assignment to a trustee."

This results from the right which every man has to do what he will with his own. The rule is different when he comes to deal with the property of other persons. The rights of the second mortgagees are concerned here. When the mortgagors procured the payment of the first mortgage with what was admittedly their own money, it extinguished that mortgage at law and in equity as between it and the second mortgage, and the latter took its place. We do not deny the right of the mortgagors to have procured some friend to have bought the mortgage and taken an assignment of it. Such a transaction would have been legal and would have kept it alive. But when they procured it to be done with their own money, the assignment of the mortgage is of no validity as against the younger mortgage. This principle is too familiar to need the citation of authority.

Judgment affirmed.